**<u>Exhibit B</u>**

**RREF's Memorandum**

(See attached.)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION

| | |
|---|---|
| RREF III STORAGE LLC,<br><br>　　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>NATIN PAUL,<br><br>　　　　　　　　　Defendant. | Index No. 652558/2021<br><br>Motion Sequence No. 002<br><br>**Oral Argument Requested** |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S APPLICATION FOR AN ORDER OF ATTACHMENT OF
DEFENDANT'S MEMBERSHIP INTERESTS IN GVS-AFFILIATED COMPANIES**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
(212) 468-8000

*Attorneys for Plaintiff*

ny-2109483

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND .............................................................................................................................. 2

    A.    The Loans At Issue ................................................................................................ 2

    B.    Defendant's Guaranty to Repay the Debt. .................................................. 3

    C.    GVS Defaults and Files for Bankruptcy ....................................................... 4

    D.    Defendant, His Evasive Conduct, and His Poor Financial Condition........................................................................................................ 7

ARGUMENT ................................................................................................................................ 10

    I.    ALL OF THE REQUIREMENTS FOR AN ORDER OF ATTACHMENT ARE SATISFIED ........................................................................................... 10

    A.    The Requirements of CPLR 6212(a) are Met. ........................................ 10

    B.    Additional Factors Show an Order of Attachment is Needed Here. ....... 122

CONCLUSION ........................................................................................................................... 144

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Hotel 71 Mezz Lender LLC v. Falor*,
   14 N.Y.3d 303 (2010) ................................................................................................................ 12

*Koehler v. Bank of Bermuda Ltd.*,
   12 N.Y.3d 533 (2009) ................................................................................................................ 10

*Pala Assets Holdings Ltd v. Rolta, LLC, et al.*,
   No. 652798/2018, 2019 WL 2929558 (Sup. Ct. N.Y. Cty. July 8, 2019) ..................... 12, 13, 14

*VisionChina Media Inc. v. S'holder Representative Servs., LLC*,
   109 A.D.3d 49 (1st Dep't 2013) ......................................................................................... 10, 13

*Weissman v. Sinorm Deli, Inc.*,
   88 N.Y.2d 437 (1996) ................................................................................................................ 11

*WZ USA, LLC v. United Rest. Grp. Int'l*,
   No. 655015/2018, 2019 WL 2929574 (Sup. Ct. N.Y. Cty. July 8, 2019) ................................ 14

**Rules**

N.Y. C.P.L.R. 3213 ........................................................................................................................ 1

N.Y. C.P.L.R. 6201 .............................................................................................................. 1, 10, 12

N.Y. C.P.L.R. 6202 ...................................................................................................................... 12

N.Y. C.P.L.R. 6212 .............................................................................................................. 1, 10, 13

## PRELIMINARY STATEMENT

On April 16, 2021, Plaintiff RREF III Storage LLC ("RREF" or "Plaintiff") filed, pursuant to CPLR 3213, a motion for summary judgment in lieu of complaint against Defendant Natin Paul to enforce an unconditional guaranty Paul had made (the "Guaranty") covering obligations relating to $82 million in loans made to one of Paul's companies, GVS Portfolio I B, LLC ("GVS"). RREF is the owner of the notes securing the loans. Although RREF's motion remains pending before the Court, Defendant is unlikely to be able to pay a judgment of more than $102 million, including principal, interest, and late fees, that RREF, as holder of the loans, seeks in this action. Therefore, RREF seeks, pursuant to CPLR 6212(a) and 6201, an order of attachment of Defendant's membership interests in World Class Holding Company, LLC and World Class Management, LLC (the "World Class LLCs"), and the assets they control.

RREF easily meets the requirements for an order of attachment. First, RREF has stated a claim for breach of contract against Defendant in its motion for summary judgment in lieu of complaint: Defendant agreed to the Guaranty, the Guaranty was triggered when GVS filed for bankruptcy shortly before the collateral securing the loans was to be auctioned as ordered by this Court, and Defendant has failed to honor the Guaranty. Second, given Defendant's cut-and-dried Guaranty obligations and his failure to honor them, RREF is likely succeed on the merits. Third, Defendant resides in Texas. Fourth, RREF is not aware of any counterclaims that exceed the amount of money it seeks to attach.

RREF can also show that Defendant will do all he can to avoid paying any judgment in favor of RREF, and that Defendant's financial position is poor. No fewer than 44 companies affiliated with Defendant have filed for bankruptcy, including GVS. Defendant has admitted that, in many of those cases, Defendant's companies sought bankruptcy protection shortly before the collateral securing their loans was to be sold at a foreclosure auction, just as GVS has done

1

twice. Indeed, on June 4, 2021, Judge Sontchi of the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court") dismissed GVS's bankruptcy petition as having been filed in bad faith "to obtain the automatic stay" of the foreclosure sale and "for a tactical advantage against RREF in the New York state court litigation that resulted in the foreclosure sale." Notwithstanding dismissal of the Delaware petition, GVS and several affiliated entities filed for bankruptcy on June 17, 2021 in the United States Bankruptcy Court for the Northern District of Texas, once again just hours before the rescheduled foreclosure sale was to occur later that morning.

Defendant's financial problems extend beyond GVS's default on the loans held by RREF and his breach of the Guaranty. Other lenders have moved to foreclose on $258 million in overdue loans made to more than two-dozen Texas-based real estate entities controlled by Defendant. At least nine guaranty enforcement actions have been filed against Defendant seeking to collect more than $80 million in debt owed. A need for an order of attachment here plainly exists.

## BACKGROUND

A.   **The Loans At Issue**

RREF is the holder of a (1) $63 million loan (the "Initial Loan"), originally extended to GVS by UBS AG ("UBS" and, together with its successor and assigns, "Lender") and a (2) $19 million loan (the "Supplemental Loan," and together with the Initial Loan, the "Loan"), originally extended to GVS by Teachers Insurance Annuity Association of America ("TIAA"). (Affidavit of Michael Winston, dated June 22, 2021 ("Winston Aff."), Ex. A at ¶ 3 & Exs. 1, 7.)

UBS extended the Initial Loan to GVS pursuant to a Mezzanine 2 Loan Agreement dated as of November 30, 2018 (the "Loan Agreement"). (Winston Aff., Ex. A at ¶ 8 & Ex. 1.) Defendant signed the Loan Agreement for GVS and, as discussed in Section B, *infra*, extended

2

ny-2109483

the Guaranty to UBS as an inducement. TIAA then made the Supplemental Loan to GVS pursuant to the Omnibus Amendment to Mezzanine 2 Loan Documents ("Omnibus Amendment") (Winston Aff., Ex. A at ¶ 11 & Exs. 7–8.) Defendant signed the Omnibus Amendment for GVS and in his personal capacity to reaffirm his obligations under the Guaranty. (Winston Aff., Ex. A at ¶ 11 & Ex. 7.) The Omnibus Amendment incorporates the Loan Agreement and the Guaranty, and it defines "Loan" to express the aggregate principal amount of $82 million (i.e. $63 million plus $19 million). (Winston Aff., Ex. A at ¶ 11 & Ex. 7 ¶ 1.3.)

On March 8, 2021, RREF acquired the Loan from TIAA pursuant to a Mezzanine Assignment and Assumption Agreement (the "Assignment"). (Winston Aff., Ex. A at ¶ 12 & Ex. 9.) Under the Assignment, TIAA assigned to RREF "all of its right, title, and interest in and to" the "Loan Documents," which is defined in the Assignment to include the Guaranty. (Winston Aff., Ex. A at ¶ 12 & Ex. 9 ¶ 2.)

### B. Defendant's Guaranty to Repay the Debt.

Defendant executed the Guaranty as an "inducement to Lender to make the Loan to Borrower and to extend such additional credit as Lender may from time to time agree to extend[.]" (Winston Aff., Ex. A at ¶ 14 & Ex. 12, at 1.) The Omnibus Amendment makes clear that:

> [A]ny and all guaranties and indemnities for the benefit of Lender that constitute Loan Documents (including, without limitation, the Guaranty) are hereby ratified and confirmed and shall not be released, diminished, impaired, reduced or adversely affected by this Amendment, and Guarantor hereby consents, acknowledges and agrees to the modifications set forth in this Amendment.

(Winston Aff., Ex. A at ¶ 16 & Ex. 7 ¶ 9.)

Under the Guaranty, which remains in effect, Defendant guaranteed to Lender, and its successors and assigns, payment and performance of the "Guaranteed Obligations" as a primary

3

ny-2109483

obligor. (Winston Aff., Ex. A at ¶ 13 & Ex. 12 §§ 1.1(a), 1.2.) The "Guaranteed Obligations" for which Defendant "irrevocably and unconditionally covenant[ed] and agree[d] that [he] is liable," (Winston Aff., Ex. A at ¶ 13 & Ex. 12 § 1.1(a)), means "from and after the date that any Springing Recourse Event occurs, payment of the entire Debt," (Winston Aff., Ex. A at ¶ 15 & Ex. 12 § 1.1(b)). Springing Recourse Events are defined to include GVS's filing of "a voluntary petition, case or proceeding under any applicable Bankruptcy Law." (Winston Aff., Ex. A at ¶ 17 & Ex. 1 § 11.22(b).) The terms of the Guaranty are clear that, upon the occurrence of a Springing Recourse Event, Defendant "shall, immediately upon demand by [RREF] and without . . . any other notice whatsoever, all such notices being hereby waived by [Defendant], pay . . . the amount due on the Guaranteed Obligations." (Winston Aff., Ex. A at ¶ 18 & Ex. 12 § 1.4.)

Defendant agreed that, "[i]n the event that [he] should breach or fail to timely perform any provisions of" the Guaranty," he "shall, immediately upon demand" by RREF, "pay [RREF] all costs and expenses (including court costs and reasonable attorneys' fees) incurred by [RREF] in the enforcement hereof or the preservation of [RREF's] rights hereunder." (Winston Aff., Ex. A at ¶ 20 & Ex. 12 § 1.7.) Defendant also agreed that his obligation to pay costs and reasonable attorneys' fees included "interest thereon at the Default Rate from the date requested by [RREF] until the date of payment to [RREF]. The covenant . . . shall survive payment and performance of the Guaranteed Obligations."[1] (Winston Aff., Ex. A at ¶ 20 & Ex. 12 § 1.7.)

C.  **GVS Defaults and Files for Bankruptcy**

GVS has been in default on the Loan since December 6, 2019, because it failed to pay its monthly Debt Service payment of the Mezzanine 2 Loan. (Winston Aff., Ex. A at ¶ 22 & Ex. 1 § 10.1(a)(i), Ex. 13.) After GVS defaulted, TIAA provided GVS with notice that an Event of

---

[1] The Guaranty also makes clear that Defendant agreed that GVS's bankruptcy, should it occur, would have no effect on his unconditional obligation to pay the entire Debt. (*Id.* Ex. A at Ex. 12 § 2.3.)

4

ny-2109483

Default, informing GVS that, in light of the Events of Default, "Mezzanine 2 Lender hereby accelerates the Mezzanine 2 Loan and declares the Mezzanine 2 Loan to be immediately due and payable in full.". (Winston Aff., Ex. A at ¶ 24 & Ex. 13, at 2.)

Following GVS's default, TIAA sought to auction off the loan collateral at a UCC foreclosure sale in September 2020. (Winston Aff., at ¶ 4.) On August 27, 2020, however, GVS commenced an action in this Court seeking to enjoin the foreclosure. *See* Verified Complaint, *GVS Portfolio I B, LLC v. Teachers Ins. Annuity Ass'n of Am.*, Index No. 0654095/2020 (Sup. Ct. N.Y. Cty. Aug. 27, 2020), NYSCEF Doc. No. 1. This Court granted GVS's motion and ordered GVS and TIAA to meet and confer regarding a revised schedule and proposed terms for a foreclosure sale. *See id.*, NYSCEF Doc. No. 108. In October 2020, the Court approved a stipulation of the parties setting forth the process for the foreclosure sale, and set a sale date of March 10, 2021. *See id.*, NYSCEF Doc. Nos. 112, 121. On March 9, 2021—one day prior to the scheduled foreclosure sale—GVS filed for a temporary restraining order with this Court, halting the sale. *See id.*, NYSCEF Doc. No. 129. GVS then sought a preliminary injunction and a further adjournment of the foreclosure sale to June 8, 2021. *See id.*, NYSCEF Doc. No. 148. On March 30, 2021, this Court denied injunctive relief, finding GVS's arguments to be without merit. *See id.*, NYSCEF Doc. No. 177. The foreclosure sale was then rescheduled for April 12, 2021. (Winston Aff., at ¶ 4.)

On April 12, 2021—hours before the rescheduled foreclosure sale was to occur—GVS filed a Voluntary Petition for Non-Individuals Filing for Bankruptcy in the United States Bankruptcy Court for the District of Delaware (the "Delaware Petition"). (Winston Aff., Ex. A at ¶ 28 & Ex. 14.) Defendant signed the Delaware Petition as "Authorized Agent" for GVS. (Winston Aff., Ex. A at ¶ 29 & Ex. 14.) Under the terms of the Loan Agreement and Guaranty,

5

ny-2109483

GVS's bankruptcy filing constitutes a Springing Recourse Event, (Winston Aff., Ex. A at ¶ 30 & Ex. 1 § 11.22(b)(ii)(D), Ex. 12 § 1.1(b).), triggering Defendant's obligation to pay the entire Debt.

On April 15, 2021, RREF demanded payment under the Guaranty from Defendant. (Winston Aff., Ex. M.) Defendant has failed to make payment. (Winston Aff., Ex. A at ¶ 33.) Thereafter, RREF commenced this action via a motion for summary judgment in lieu of complaint to enforce the Guaranty (NYSCEF Doc. No. 2), but Defendant, consistent with his pattern of delay, sought to adjourn that motion by a month.[2] (NYSCEF Doc. No. 35.)

On April 26, 2021, RREF moved to dismiss the Delaware Petition as having been filed as a bad faith litigation tactic to delay the foreclosure sale. *See* RREF's Mot. For Entry of an Order Dismissing the Debtor's Chapter 11 Case with Prejudice and Granting Relief from the Automatic Stay, *In re GVS Portfolio I B, LLC*, No. 21-10690 (CSS) (Bankr. D. Del. Apr. 26, 2021), ECF No. 8; (*see also* Winston Aff., ¶ 7.) On June 4, 2021, the Delaware Bankruptcy Court dismissed the Delaware Petition, holding "the fact that this case was filed immediately before foreclosure in order to obtain the automatic stay coupled with the two-party nature of the dispute between [GVS] and RREF, supports the finding that this case was filed by the Debtor for a tactical advantage against RREF in the New York state court litigation that resulted in a foreclosure sale." (Winston Aff., Ex. L at 22; *see also id.* ¶ 7.)

The foreclosure sale was then rescheduled to June 17, 2021 at 10:00 a.m. (Winston Aff., ¶ 8, Ex. D.) On the morning of June 17, 2021, GVS, GVS Portfolio I, LLC (which is 100% owned by GVS), and 12 other GVS-affiliated LLCs (which are 100% owned by GVS Portfolio I,

---

[2] Defendant's Opposition to Plaintiff's Motion for Summary Judgment in Lieu of Complaint, NYSCEF Doc. No. 49, asserts no counterclaims, nor could there be. (Affirmation of Joel Haims in Support of Plaintiff's Application for an Order of Attachment, dated June 22, 2021 ("Haims Aff."), ¶ 2).

6

ny-2109483

LLC and which collectively own 64 self-storage facilities) filed a Voluntary Petition for Non-Individuals Filing for Bankruptcy in the Northern District of Texas (the "Texas Petition"), which again automatically stayed the foreclosure sale. *In re GVS Texas Holdings I, LLC, et al.*, No. 21-31119-11 (Bankr. N.D. Tex. June 17, 2021), ECF No. 1; (*see also* Winston Aff., ¶ 9, and Ex. E). Neither the two entities that are the subject of this motion for attachment—the World Class LLCs—nor Defendant himself have filed for bankruptcy. (Winston Aff., ¶ 12.) The total amount owed under the Loan, including principal, interest due, fees for late payment, and costs and expenses is at least $102,635,630.94. (Winston Aff. ¶ 20.)

D. **Defendant, His Evasive Conduct, and His Poor Financial Condition**

Defendant, a real estate investor who resides in Texas, is the President and indirect owner of GVS. (Winston Aff., Ex. A at ¶ 4 & Ex. 12, p. 1.) Defendant, a non-resident of New York, has consented to the jurisdiction of this Court. (Winston Aff., Ex. A at Ex. 12 § 6.3.) Defendant is the sole owner of 100% of the common units of World Class Holding Company, LLC and World Class Management, LLC. World Class Holding Company, LLC, in turn, owns 100% of World Class Holdings, LLC, which owns 100% of Word Class Holdings I, LLC, which owns 100% of GVS Portfolio I C, LLC, which owns 100% of GVS, the borrower here. (Winston Aff., ¶ 3.) The below organization chart, adapted from an organizational chart in the Loan Agreement (Winston Aff., Ex. B), reflects the relevant corporate structure:



Defendant, whose home, according to published reports, was recently raided by the FBI as part of an investigation into Texas Attorney General Ken Paxton (Winston Aff., Ex. F), has a history of filing bankruptcy just before scheduled foreclosure auctions, something GVS did in both Delaware and Texas to thwart RREF from satisfying the loans through the foreclosure process. (Winston Aff., Ex. A at ¶ 28 & Ex. 14.) Since November 2019, no fewer than 44 companies affiliated with Defendant have filed for bankruptcy. (Winston Aff., ¶ 11.) In January

8

ny-2109483

2020, one of Defendant's companies filed for bankruptcy shortly before the property it owned in Austin, Texas was to be auctioned off in a foreclosure proceeding. (Winston Aff., Ex. H ("*Bankruptcy filing forestalls foreclosure on former 3M campus in Austin*").)

This year, Defendant and GVS employed the same tactic against RREF on two separate occasions by filing bankruptcy petitions mere hours before the collateral securing GVS's loans was to be sold at a foreclosure auction. (Winston Aff.. ¶¶ 5, 9, and Ex. A at ¶ 28 & Ex. 14.) The Delaware Bankruptcy Court recently dismissed GVS's Delaware Petition has having been filed in bad faith. (Winston Aff., Ex. L.) Indeed, in fourteen of the bankruptcies Defendant's other companies filed, courts lifted the automatic stay that previously prevented foreclosure (Winston Aff., ¶¶ 11, 13), with two courts specifically finding that Defendant's companies filed for bankruptcy as a litigation tactic to avert payment rather than to reorganize. *See In re WC Teakwood Plaza, LLC*, No. 20-11104 (TMD) (Bankr. W.D. Tex. May 17, 2021), ECF No. 217; *In re WC 4811 South Congress LLC*, No. 20-11105 (TMD) (Bankr. W.D. Tex. May 17, 2021), ECF No. 302. In a deposition in one his companies' bankruptcies, Defendant admitted that pending foreclosure sales were "one of the reasons" his LLCs filed for bankruptcy, often "near the date of a pending action." (Winston Aff., Ex. I (*In re 900 Cesar Chavez, et al.*, Paul 30(b)(6) Dep. Tr., at 273:5-273:18, 274:1-274:13).)

News articles and court filings also call into doubt Defendant's financial health. An October 2020 article indicated that, since late 2019, lenders have moved to foreclose a combined $258 million in overdue loans made to more than two-dozen Texas-based real estate entities controlled by Defendant. (Winston Aff., Ex. J ("*Nate Paul companies alleged to have defaulted on $258M in debt*").) At least nine guaranty enforcement actions have been filed against Defendant personally seeking to collect more than $80 million in debt owed. (Winston Aff.,

9

¶ 17.) Defendant has also been sued by several banks for hundreds of thousands of dollars in credit card debt. (Winston Aff., ¶ 19; *Am. Express Nat'l Bank v. Paul*, No. D-1-GN-20-005686 (Tex. Dist. Ct., Travis Cty. Oct. 6, 2020); *Am. Express Nat'l Bank v. World Class Cap.*, No. D-1-GN-20-005117 (Tex. Dist. Ct., Travis Cty. Sept. 22, 2020); *Amegy Bank v. The Inroads Grp. Ltd.*, No. 2017-45012 (Tex. Dist. Ct., Harris Cty. July 7, 2017).)

## ARGUMENT

### I. ALL OF THE REQUIREMENTS FOR AN ORDER OF ATTACHMENT ARE SATISFIED.

#### A. The Requirements of CPLR 6212(a) are Met.

"By means of attachment, a creditor effects the prejudgment seizure of a debtor's property, to be held by the sheriff, so as to apply the property to the creditor's judgment if the creditor should prevail in court. Attachment simply keeps the debtor away from his property or, at least, the free use thereof; it does not transfer the property to the creditor." *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 538 (2009). To prevail on a motion for an order of attachment, Plaintiff must show that (i) there is a cause of action, (ii) it is probable plaintiff will succeed on the merits, (iii) one or more grounds for attachment provided in CPLR 6201 exist, and (iv) the amount demanded from the defendant exceeds all counterclaims known to the plaintiff. CPLR 6212(a). *See also VisionChina Media Inc. v. S'holder Representative Servs., LLC*, 109 A.D.3d 49, 59 (1st Dep't 2013) ("The plaintiff must show a viable cause of action and the probability that it will succeed on the merits, that one or more grounds exist for attachment as set forth in CPLR 6201, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff.").

RREF satisfies all four requirements here.

First, there can be no dispute that RREF has stated a cause of action. RREF's motion for

summary judgment in lieu of complaint in this action sets forth the facts concerning the loans, GVS's default, its subsequent bankruptcy, the Guaranty, and Defendant's failure to honor the Guaranty. (*See* NYSCEF Doc. Nos. 2-19.) In his Opposition to Plaintiff's Motion for Summary Judgment in Lieu of Complaint, including in his own sworn affidavit, Defendant neither denies that GVS defaulted on the Loan nor his obligation to pay the Debt. (NYSCEF Doc. No. 49, 41.) That is a prima facie breach of contract claim. *See Weissman v. Sinorm Deli, Inc.*, 88 N.Y.2d 437, 443–44 (1996) (holding plaintiff established prima facie case for breach of a contract—a note—by proof of "an instrument for the payment of money only" and default in payment and indemnification under that instrument).

Second, RREF should prevail on the merits. The Guaranty states that Defendant "irrevocably and unconditionally covenants and agrees that [he] is liable," (Winston Aff., Ex. A at ¶ 13 & Ex. 12 § 1.1(a)), which makes Defendant liable for, "from and after the date that any Springing Recourse Event occurs, payment of the entire Debt," (Winston Aff., Ex. A at ¶ 15 & Ex. 12 § 1.1(b)). Springing Recourse Events are defined to include GVS's filing of "a voluntary petition, case or proceeding under any applicable Bankruptcy Law," which GVS has now done. (Winston Aff., Ex. A at ¶ 17 & Ex. 1 § 11.22(b).) Thereafter, Defendant was required to honor the Guaranty "immediately upon demand by [RREF] and without . . . any other notice whatsoever, all such notices being hereby waived by [Defendant]." (*See* Winston Aff., Ex. A at ¶ 18 & Ex. 12 § 1.4.) Given the iron-clad nature of Defendant's obligations under the Guaranty, the indisputable fact that the Guaranty has been triggered, and Defendant's failure to honor his obligations, RREF is likely to succeed on the merits. *See Pala Assets Holdings Ltd v. Rolta, LLC, et al.*, No. 652798/2018, 2019 WL 2929558, at *2 (Sup. Ct. N.Y. Cty. July 8, 2019) (Masley, J.) ("Defendants are in breach of unambiguous contracts to make payments of interest

11

ny-2109483

and principal.").

Third, at least one ground exists for attachment pursuant to CPLR 6201. CPLR 6201(1) provides, in relevant part, that an "order of attachment may be granted in any action . . . where the plaintiff has demanded and would be entitled . . . to a money judgment against one or more defendants, when: . . . the defendant is a nondomiciliary residing without the state." Defendant resides in Texas (Winston Aff., Ex. A at Ex. 12, p. 1); therefore, he is a "nondomiciliary residing without the state." CPLR 6201(1). Further, as shown above, Defendant is the sole owner of 100% of the common units of the World Class LLCs. World Class Holding Company, LLC is the ultimate owner of GVS. (Winston Aff., ¶ 3.) The Court of Appeals, in *Hotel 71 Mezz Lender LLC v. Falor*, 14 N.Y.3d 303 (2010), established that attachment of a defendant's membership interests in out-of-state LLCs, such as the World Class LLCs, is appropriate. In particular, the Court of Appeals explained that "the intangible property plaintiff sought to attach—defendants' ownership/membership interests in 22 out-of-state limited liability companies—is akin to intangible contract rights, and is clearly assignable and transferable. Thus, the interests in question are 'property' for purposes of CPLR 6202." *Id.* at 314.

Finally, the amount RREF demands from Defendant exceeds all counterclaims known to RREF. (Haims Aff., ¶ 2.) To date, Defendant has not asserted any counterclaims against RREF, and RREF is not aware of any grounds for Defendant to do so. *See Pala Assets Holdings Ltd*, 2019 WL 2929558, at *2 ("[N]o such counterclaims have been filed in this action.").

Thus, all four elements of CPLR 6212(a) are satisfied.

### B. Additional Factors Show an Order of Attachment is Needed Here.

RREF recognizes that "the mere fact that defendant is a non-domiciliary residing without the State of New York is not sufficient ground for granting an attachment." *VisionChina Media Inc.*, 109 A.D.3d at 61–62 (citation and internal quotations omitted). Instead, RREF must show a

12

ny-2109483

"continuing need for the levy," *Pala Assets Holdings*, 2019 WL 2929558, at *3, which RREF can demonstrate by showing an "'identifiable risk that the defendant will not be able to satisfy the judgment.'" *Id.* (quoting *VisionChina Media Inc.*, 109 A.D.3d at 60). In determining whether such a risk exists, the Court should consider Defendant's "financial position or past and present conduct," including his "history of paying creditors" or his "stated or indicated intent to dispose of assets," *VisionChina Media Inc.*, 109 A.D.3d at 60, or whether Defendant "is in a poor financial condition," *Pala Assets Holdings*, 2019 WL 2929558, at *3.

Here, ample evidence exists that Defendant likely cannot—and will not—pay any judgment RREF should obtain.

Since November 2019, no fewer than 44 companies affiliated with Defendant have filed for bankruptcy. (Winston Aff., ¶ 11.) In many of those cases—including this one—Defendant's companies sought bankruptcy protection shortly before the collateral securing their loans were sold at a foreclosure auction. (Winston Aff., ¶ 11; Ex. A at ¶ 28 & Ex. 14.) The Delaware Bankruptcy Court has dismissed the Delaware Petition as having been filed as a bad faith litigation tactic to stall foreclosure. (Winston Aff., Ex. L; *see also id.* ¶¶ 13, 14). And at least two other courts have found, in ordering the bankruptcy stay lifted so that foreclosures could proceed, that Defendant's companies filed for bankruptcy as a litigation tactic to avert payment rather than to reorganize. *See In re WC Teakwood Plaza, LLC*, No. 20-11104 (TMD) (Bankr. W.D. Tex. May 17, 2021), ECF No. 217; *In re WC 4811 South Congress LLC*, No. 20-11105 (TMD) (Bankr. W.D. Tex. May 17, 2021), ECF No. 302. Defendant has even admitted that pending foreclosure sales were "one of the reasons" his LLCs filed for bankruptcy, often "near the date of the pending actions." (Winston Aff., Ex. I (*In re 900 Cesar Chavez, et al.,* Paul 30(b)(6) Dep. Tr., at 273:5-273:18, 274:1-274:13).) Lenders have moved to foreclose on $258

13

ny-2109483

million in overdue loans made to more than two-dozen Texas-based real estate entities controlled by Defendant. (Winston Aff., Ex. J ("*Nate Paul companies alleged to have defaulted on $258M in debt*").) And Defendant's own financial condition is precarious, as at least nine guaranty enforcement actions have been filed against him seeking to collect more than $80 million in debt owed. (Winston Aff., ¶ 18.)

This Court has ordered pre-judgment attachment under 6201(1) under similar circumstances. In *Pala Assets Holdings*, the Court granted attachments of more than $160 million in assets where a nondomiciliary LLC, like GVS here, had failed to make required payments on certain notes, and plaintiff had shown a "continuing need for the levy" based on, among other things, defendant having "a history of not paying its creditors" or being "in a poor financial position." 2019 WL 2929558, at *2–3. In *WZ USA, LLC v. United Restaurant Group International*, No. 655015/2018, 2019 WL 2929574, at *1–3 (Sup. Ct. N.Y. Cty. July 8, 2019), the court granted an attachment of $1.8 million where the record reflected that defendant had used funds invested in a restaurant group for personal expenses and engaged in other "sinister maneuvers" and "fraudulent conduct."

Here, the combination of Defendant's evasive litigation tactics, including before this Court, and his evident "poor financial condition," *Pala Assets Holdings*, 2019 WL 2929558, at *3, constitutes "the sort of 'sinister maneuvers' and 'fraudulent conduct' that have come to define the classic scenario in which an attachment is truly necessary." *WZ USA, LLC*, 2019 WL 2929574, at *3.

## CONCLUSION

For all of the foregoing reasons the Court should grant Plaintiff's motion for an order of attachment of Defendant's interests in World Class Holding Company, LLC and World Class Management, LLC, and all assets they control.

Dated: New York, New York
      June 22, 2021

/s/ *Joel C. Haims*
Joel C. Haims
Haimavathi V. Marlier
Steven T. Rappoport
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Telephone: (212) 468-8000

*Attorneys for Plaintiff*

15

ny-2109483

## WORD COUNT CERTIFICATION

Pursuant to Rule 17 of subdivision (g) of section 202.70 of the Uniform Rules for the Supreme Court and County Court (Rules of Practices for the Commercial Division of the Supreme Court), I hereby certify that the total number of words in this brief, excluding the caption, signature block, and word count certifications is 4,383.

                                                  */s/ Joel C. Haims*
                                                  Joel C. Haims