JACKSON WALKER LLP
Michael S. Held (State Bar No. 09388150)
Jennifer F. Wertz (State Bar No. 24072822)
J. Machir Stull (State Bar No. 24070697)
Vienna F. Anaya (State Bar No. 24091225)
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
Telephone: (214) 953-6000
Facsimile: (214) 953-5822

*Counsel for RREF III Storage LLC*

MORRISON & FOERSTER LLP
Theresa A. Foudy (admitted *pro hac vice*)
James M. Peck (admitted *pro hac vice*)
Mark A. Lightner (admitted *pro hac vice*)
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for RREF III Storage LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>GVS TEXAS HOLDINGS I, LLC, *et al.*[1]<br><br>        Debtors. | Chapter 11<br><br>Case No. 21-31121-MVL<br><br>**(Jointly Administered)** |
| GVS TEXAS HOLDINGS I, LLC, *et al*.<br><br>        Plaintiffs,<br><br>v.<br><br>RREF III STORAGE LLC,<br><br>        Defendant. | Adversary Proc. No. 21-03045-MVL |

**REPLY BRIEF IN SUPPORT OF RREF III STORAGE LLC'S
<u>MOTION TO DISMISS THE COMPLAINT</u>**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: GVS Texas Holdings I, LLC (7458); GVS Texas Holdings II, LLC (1225); GVS Portfolio I, LLC (6441); GVS Portfolio I B, LLC (7171); GVS Portfolio I C, LLC (3093); WC Mississippi Storage Portfolio I, LLC (0423); GVS Nevada Holdings I, LLC (4849); GVS Ohio Holdings I, LLC (6449); GVS Missouri Holdings I, LLC (5452); GVS New York Holdings I, LLC (5858); GVS Indiana Holdings I, LLC (3929); GVS Tennessee Holdings I, LLC (5909); GVS Ohio Holdings II, LLC (2376); GVS Illinois Holdings I, LLC (9944); and GVS Colorado Holdings I, LLC (0408). The location of the Debtors' service address is: 814 Lavaca Street, Austin, Texas 78701.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable here by Federal Rule of Bankruptcy Procedure 7012, RREF, by and through its undersigned counsel, submits this reply brief in further support of its motion to dismiss the Debtors' Complaint.[2]

## PRELIMINARY STATEMENT

1. The Debtors' opposition (the "Opposition") to the Motion relies upon three assertions that may easily be disposed of as a matter of law.

2. <u>First</u>, the Debtors continue to rely upon their "gotcha" interpretation of the words "and all assets they control" in the Attachment Motion to argue that RREF sought an order of attachment over the Debtors themselves. [Dkt. No. 1 at ¶ 22.] However, as was already explained in the Motion, the full sentence that surrounds those words makes it clear that all RREF sought to do was to obtain an Order of Attachment "*against the assets of the Defendant*"—*i.e.,* Paul—"and *any interest he may have in personal property* or any debt owed to him situated in the State of New York, *including* but not limited to *his membership interest* in World Class Holding Company, LLC and World Class Management, LLC, and all assets they control." [Dkt. No. 1 at ¶ 19 (emphasis added).] The operative language of the Attachment Motion reflects that RREF sought only to attach "the assets of Defendant," *i.e.*, non-Debtor Paul, which would "include" his membership interests in World Class [Dkt. No. 1 at ¶ 19], but it would not include the Debtors nor any property of the Debtors' estates as they are not Paul's personal property. [Dkt. No. 7 at ¶ 20.]

3. <u>Second</u>, the Debtors' conjecture, without support, that RREF somehow sought to "interfere with the governance of the Debtors" and "insert itself into the plan process" by moving for prejudgment attachment of **non-Debtor** Natin Paul's *personal* property.[3] **But, an attachment**

---

[2] Terms used but not defined herein shall have the meanings ascribed to them in *RREF III Storage LLC's Memorandum of Law in Support of is Motion to Dismiss the Complaint* [Dkt. No. 7] (the "Motion").

[3] Pre-judgment attachment under New York law does not provide a creditor with the ability to insert itself into another company's corporate governance matters or plan process. As the secured lender to the Mezz 2 Debtor, RREF intends

***of Paul's membership interests in World Class would give RREF zero control over the Debtors' corporate governance or plan process.*** Under New York law, prejudgment attachment does not transfer any legal ability to RREF III Storage LLC ("RREF") to control any specific property held by World Class; rather, it would merely prevent Paul from disposing of his membership interests while the Guaranty Action is pending.

4. <u>Third</u>, the Debtors baselessly assert that RREF is seeking to collect on its prepetition claim against the Debtors by attaching membership interests in the Debtors' ultimate parent. [Dkt. No. 1 at ¶¶ 8-13.] In making this argument, the Debtors conveniently ignore that Natin Paul is personally liable to RREF under the Guaranty, and that the purpose of the Attachment Motion is to secure RREF's ability to collect upon the Guaranty against Paul.

5. On the face of the Complaint, and the documents incorporated by reference therein, RREF has not violated the Bankruptcy Code's automatic stay provisions. The Court should therefore dismiss the Complaint.

## ARGUMENT

### I. The Debtors Cannot Amend The Complaint Through New Allegations in Their Opposition

6. Although the Debtors now argue that RREF sought to attach Paul's personal property to interfere with the governance of World Class and thereby insert itself into the plan process, the Complaint is devoid of any such allegations. In fact, the Complaint only alleges, with no supporting facts whatsoever, that "RREF seeks control over the property of the Debtors' estates to ensure repayment of its pre-petition claim." [Dkt. No. 1 at ¶ 35.]

---

to participate in the plan process before this Court – not through the Attachment Motion. The purpose of the Attachment Motion was the same as all pre-judgment attachment motions: to secure the ability to collect a judgment – in this instance, against non-Debtor guarantor Paul.

7. As explained in the Motion, RREF did not seek to obtain control over any Debtor property by making its Attachment Motion, nor could it do so under New York law. It is also axiomatic that the Debtors cannot use their opposition to the Motion to assert allegations they should have specifically pleaded in the Complaint. *See Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 289 (5th Cir. 2006) ("Needless to say, in reviewing a Rule 12(b)(6) dismissal, we review only the well-pleaded facts in the complaint. This new allegation may *not* be considered. The claim otherwise fails."); *City of Dallas v. Hall*, Nos. 3:07-CV-0060-P, 3:07-CV-0213-P, 2007 WL 3125311, at *11 (N.D. Tex. Oct. 24, 2007), *aff'd*, 562 F.3d 712 (5th Cir. 2009) (citing *Town of Ogden Dunes v. Bethlehem Steel Corp.*, 996 F. Supp. 850, 855 (N.D. Ind. 1998)) ("[C]omplaint cannot be amended by briefs filed by plaintiff in opposition to motion to dismiss"). The Debtors' attempt to amend the Complaint through bald allegations in their Opposition shows the insufficiency of the Complaint, which should be dismissed.

### II. The Attachment Motion Did Not Violate the Automatic Stay Provisions

8. The Attachment Motion did not violate any provision of Section 362 of the Bankruptcy Code, because it sought to attach only non-Debtor property and would have no effect on the Debtors' corporate governance. *See* 11 U.S.C. § 362(a).

9. <u>First</u>, RREF's Attachment Motion did not seek to attach the Debtor's property; rather, it sought to preserve *non-Debtor* and third-party guarantor Paul's *personal* property subject to jurisdiction in New York to satisfy any money judgment RREF might obtain in the Guaranty Action. Paul's membership interests in World Class are not part of the bankruptcy estate—and the Debtors do not contend otherwise. The distinction between seeking to attach debtor versus third-party property is dispositive and, combined with the fact that attachment does not transfer control of the property, renders the Debtors' cited cases in support of their new-found corporate

governance argument unavailing.[4] *See In re Hutchison*, Case No. 01-46374-BJH, 2002 Bankr. LEXIS 2014, at **2-4 (Bankr. N.D. Tex. Jan. 18, 2002) (a third-party's post-petition attempt to vote the *debtor's shares*, which were part of the *debtor's* bankruptcy estate, in an attempt to remove the *debtor* as an officer and director of a company violated the automatic stay); *In re Country Estates Nursing Home, Inc.*, 268 B.R. 316, 320 (Bankr. D. Mass. Sept. 28, 2001) (*shares held by debtors* that filed Chapter 11 petitions were part of the bankruptcy estate despite being subject to a pledge agreement and third party violated the automatic stay by attempting to vote the pledged stock); *In re Bicoastal Corp.*, No. 89-8191-8P1, 1989 WL 607352, at *4-5 (Bankr. M.D. Fla. Nov. 21, 1989) (third-party sought to appoint a majority of the *debtor's* board of directors); *In re Texas Rangers Baseball Partners*, 434 B.R. 393, 404 (Bankr. N.D. Tex. 2010) (third-party lender was not permitted to enforce contractual rights to control the *debtor*); *see also In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1148 (5th Cir. 1987) (state court action against non-debtors that is premised solely upon the alter ego theory that non-debtors control the *debtor* is automatically stayed upon the filing of the debtor's bankruptcy petition).

10. <u>Second</u>, the Debtors' description of prejudgment attachment under New York law is incorrect. In *In re International Banking Corporation B.S.C.*, 439 B.R. 614 (Bankr. S.D.N.Y. 2010), a case cited by the Debtors in their Opposition, the court stated that "[a]n order of attachment, standing alone, gives no greater rights to the attaching creditor." *Id.* at 621. Prejudgment attachment does not transfer control, or possession, of the property in question to the

---

[4] The Debtors' Chapter 11 petition does not stay efforts to enforce Paul's obligations under the Guaranty. *See United States v. Stribling Flying Serv., Inc.*, 734 F.2d 221 (5th Cir. 1984) (finding the obligations of individual third-party guarantors were not affected by a debtor's chapter 11 proceeding); *U.S. Bank N.A. v. Perlmutter (In re S. Side House, LLC)*, 470 B.R. 659, 676 (Bankr. E.D.N.Y. 2012) ("And New York law permits the enforcement of agreements that impose liability on guarantors when a borrower files for bankruptcy.").

plaintiff.[5] Prejudgment attachment merely denies the defendant certain use of its property during the pendency of an action for a money judgment. As stated in the Motion, the New York Court of Appeals has held that, in a prejudgment attachment proceeding, "a creditor effects the prejudgment seizure of a debtor's property, to be held by the sheriff, so as to apply the property to the creditor's judgment if the creditor should prevail in court. Attachment simply keeps the debtor away from his property or, at least, the free use thereof; *it does not transfer the property to the creditor.*" *Koehler v. Bank of Berm., Ltd.*, 12 N.Y.3d 533, 538 (2009) (emphasis added); *see also* [Dkt. No. 7 at ¶ 3].

11. <u>Third</u>, there is no basis for the Debtors' argument that the Guaranty Action is somehow an action against the Debtors in violation of Sections 362(a)(6) and (1). The Guaranty Action is an action to collect on the unconditional and irrevocable Mezz 2 Guaranty made by non-Debtor Paul in favor of the holder of the Mezz 2 Loan (*i.e.*, RREF). RREF does not assert a claim against the Debtors in the Guaranty Action. Moreover, as shown in the Motion and herein, RREF did not seek to attach any Debtor property via the Guaranty Action—RREF sought an Order of Attachment "against the assets of [Paul] and any interest he may have in any personal property or any debt owed to him situated in the State of New York."

12. In sum, Paul's membership interests in the non-Debtor World Class entities are not assets of the Debtors, and the Debtors have not alleged otherwise. Accordingly, because the

---

[5] *Elbar Investments, Inc. v. Prins (In re Okedokun)*, 968 F. 3d 378 (5th Cir. 2020), is equally inapposite, as the creditor at issue there was found to have violated the automatic stay by seeking to control the *debtor's* property in numerous ways, including by filing a post-petition *lis pendens* against the *debtor's* real property. *Id.* at 387. Here, there is no allegation that RREF sought any post-petition relief with respect to any of the Debtors' property—neither Paul nor World Class are Debtors. Thus, even if a *lis pendens* under Texas law and attachment under New York law both function as the equivalent of a lien, it does not follow that the Attachment Motion sought to put a post-petition lien on the Debtors' property.

Attachment Motion sought to attach only the property of a non-Debtor, the Complaint has failed to state a claim against RREF for violating the automatic stay.

### III. The Court Should Not Extend the Automatic Stay to World Class

13. The Complaint is devoid of any facts supporting any "identity of interests" between the Debtors and World Class. Merely saying those words in the Opposition does not satisfy the pleading requirements. *See Beran v. World Telemetry, Inc.*, 747 F. Supp. 2d 719 (S.D. Tex. 2010) ("[T]he party seeking to extend the stay will bear the burden to show that 'unusual circumstances' exist warranting such an extension of the stay to a nondebtor." *Id.* at 723 (citing 2 William L. Norton, Jr., Norton Bankruptcy Law and Practice § 43:4 (3d ed. Supp. 2010)). Moreover, the Opposition's new arguments that (i) RREF sought to indirectly control the Debtors by attaching non-Debtor Paul's membership interests in World Class and (ii) the Guaranty Action could interfere with the Debtors' reorganization appear nowhere in the Complaint and, therefore, should be disregarded. *See Fin. Acquisition Partners*, 440 F.3d at 289; *City of Dallas*, 2007 WL 3125311, at *12. The Debtors' claim to extend the stay should be disposed on this basis alone.

14. Once again, the cases cited by the Debtors in support of their stay extension request are unavailing and show how far afield this case is from those where the stay has been extended. In *Gerard v. W.R. Grace & Co. (In re W.R. Grace & Co.)*, 115 F. App'x 565 (3d Cir. 2004), the debtor had agreed to indemnify a third-party for asbestos liability and sought to extend a Section 105 injunction to that third-party since litigation against the third-party, which was based on an alleged conspiracy between the third-party and the debtor, would require discovery from the debtor and would undoubtedly interfere with the debtor's reorganization. In *Vitro v. ACP Master, Ltd. (In re Vitro, S.A.V. De C.V.)*, 455 B.R. 571, 580 (Bankr. N.D. Tex. 2011), certain non-debtor subsidiaries had guaranteed notes for a holding company prior to its filing for bankruptcy, and

creditors had sought a pre-judgment attachment against certain of those non-debtor subsidiaries. The court refused to block guaranty actions against those non-debtor subsidiaries, expressly finding that the guaranty actions were "unlikely to have an adverse impact on the debtor's ability to reorganize." *Id.* at 583. Here, Paul, and not any companies controlled by the Debtors, made the Guaranty, and the pre-judgment attachment was sought against Paul alone, and there are no well-pled allegations showing that enforcement of the Guaranty against Paul will interfere with the Debtors' reorganization.

15. And in *Chase Manhattan Bank v. Third Eighty-Ninth Associates (In re Third Eighty-Ninth Associates)*, 138 B.R. 144, 147 (S.D.N.Y. 1992), the court extended the stay over a debtor's managing partner, but not over its managing agents, where it was shown that the managing partner would provide capital into the reorganization and was involved in the day-to-day management of the debtors' underlying property. Here, there are no allegations that Paul has made personal financial commitments to the Debtors or that he will help fund a reorganization such that enforcement of RREF's guaranty against him would adversely impact the Debtors. Indeed, the Debtors appointed Robert Albergotti to be their lead director responsible for supervising their restructuring efforts. *See In re GVS Texas Holdings, LLC*, No. 21-31119-MVL, ECF No. 25 ¶ 18 (filed June 29, 2021). The stay should not be extended to World Class.

## CONCLUSION

16. Based on the Motion and the foregoing, RREF respectfully submits that the Complaint should be dismissed.

Dated: August 12, 2021
Dallas, Texas

Respectfully submitted,

**JACKSON WALKER LLP**

*/s/ Jennifer F. Wertz*
Michael S. Held (State Bar No. 09388150)
mheld@jw.com
Jennifer F. Wertz (State Bar No. 24072822)
jwertz@jw.com
J. Machir Stull (State Bar No. 24070697)
mstull@jw.com
Vienna F. Anaya (State Bar No. 24091225)
vanaya@jw.com
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
Telephone: (214) 953-6000
Facsimile: (214) 953-5822

-and-

**MORRISON & FOERSTER LLP**
Theresa A. Foudy (admitted *pro hac vice*)
tfoudy@mofo.com
James M. Peck (admitted *pro hac vice*)
jpeck@mofo.com
Mark A. Lightner (admitted *pro hac vice*)
mlightner@mofo.com
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for RREF III Storage LLC*